error to refuse so to charge, for Curnen upon the undisputed proof was the general manager of the firm, and its representative in charge of the 125th street branch, and there was no necessity that he should be specially authorized to receive protests from the customers of that branch; that came within the scope of his general authority. If the refusal is to be taken literally, of course it had no application to the facts in the case.

[2] We are of the opinion that the agency of Curnen having been established, and defendant's testimony as to his protest to him against the accuracy of the account having been uncontradicted, plaintiff had failed to establish that there was any account stated.

[3] To constitute an account stated requires the act of two parties, the debtor and the creditor.

"There must be a mutual agreement between them as to the allowance and disallowance of the respective claims, and as to the balance as it is struck upon the final adjustment of the whole account and demands of both sides. Their minds must meet as in making other agreements, and they must both assent to the account and the balance as correct. But this agreement and assent need not be direct and express, but may be implied from circumstances. If one party presents his account to the other, and the latter makes no objection, it may well be inferred that he is satisfied with and assents to it as correct. If an account be made up and transmitted by one party to the other by mail, and the latter keeps it for some considerable time without making any objection in it, he is held to have acquiesced in it. But in all cases there must be proof, in some form, of an express or implied assent to the account rendered by one party to the other, before the latter can be held to be so far concluded that he can impeach it only for fraud or mistake." Stenton v. Jerome, 54 N. Y. 484.

In this case not only is there no proof of any assent to the account by defendant, either expressed or implied, but there appears the uncontradicted proof of a protest against the account and a repudiation of its accuracy.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

SAITTA v. NEW YORK & CUBA MAIL S. S. CO.

(Supreme Court, Appellate Division, First Department.    July 7, 1911.)

1. FRAUD (§ 49*)—FRAUDULENT BILLS OF LADING—PLEADING.

Plaintiff, a fruit dealer, alleged that there was a trade custom in shipping circles by which the words "box" and "half box" had a well-defined meaning; that he had arranged for certain persons purchasing oranges to draw against bills of lading to be deposited with plaintiff's bankers; that defendant, duly authorized agent at the port of Vera Cruz, issued to such persons certain sets of bills of lading wherein defendant falsely and fraudulently recited that it had received quantities of "boxes" of oranges from said persons, when in fact it had received only "half boxes"; that said persons drew their bills of exchange on plaintiff's bankers, who, relying on the bills of lading, paid the drafts and delivered the bills to plaintiff. Plaintiff sought to recover absolutely from defendant one-half of the advances made by his bankers. *Held* that, to recover on this theory, plaintiff must prove the custom alleged, a false and fraudulent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

misdescription of the goods in the bills of lading, and reliance thereon by the bankers with knowledge of the custom.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 49.*]

2. CUSTOMS AND USAGES (§ 19*)—EVIDENCE—SUFFICIENCY.

In an action for fraudulent issuance of false bills of lading, evidence *held* insufficient to establish that there was a custom in shipping circles by which the words "box" and "half box" had a well-defined meaning relative to shipments of oranges.

[Ed. Note.—For other cases, see Customs and Usages, Dec. Dig. § 19.*]

Appeal from Appellate. Term.

Action by Philip W. Saitta against the New York & Cuba Mail Steamship Company. From a judgment of the Appellate Term affirming a judgment of the City Court for plaintiff and an order of said court denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 142 App. Div. 939, 127 N. Y. Supp. 1142.

Argued before INGRAHAM, P. J., and McLAUGHLIN, DOWLING, CLARKE, and SCOTT, JJ.

Norman B. Beecher, for appellant.
Edward W. S. Johnston, for respondent.

DOWLING, J. Plaintiff, who was engaged in business as an importer of fruit in the city of New York, in August, 1908, entered into an agreement at that city with the firm of Muller, Schall & Co., bankers, whereby Joseph H. Tinaglia and Talmmo Rossi, who were about to leave for Vera Cruz, in the Republic of Mexico, in order to purchase oranges for this market, might draw against bills of lading to be deposited with the bankers to the amount of 90 cents for each box of oranges consigned to plaintiff or for his account at this port, and shown by said bills. The complaint herein sets forth that there was a trade custom in shipping circles by which the words "box" and "half box" had a well-defined meaning, of universal application, extending to the fixing of freight charges and the adjustment of tariff duties as well as to the buying and selling of the oranges themselves; that Berea, O'Kelly & Co., defendant's duly authorized agents at the port of Vera Cruz, issued certain sets of bills of lading wherein and whereby the defendant "falsely and fraudulently recited" that it had received certain quantities of "boxes" of oranges from Tinaglia and Rossi, respectively, whereas, in fact, it had received "half boxes" only; that Tinaglia and Rossi drew their bills of exchange upon plaintiff's agent and bankers, Muller, Schall & Co. for 90 cents per box for the number of boxes set forth in the various bills of lading, attaching the latter to the draft; and that the bankers, relying upon the truth of the statements contained in the bills of lading, paid the drafts and delivered the bills to plaintiff, who entered the goods as "boxes," paid the duty thereon, and only learned that they were "half boxes" when he endeavored to obtain the oranges at the defendant's dock in this city, whereupon he refused to accept them, but afterwards, in order to prevent further damage because of their perishable

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nature, caused them to be sold for account of whom it might concern, which was done at much less than the market rate for sound oranges. Plaintiff admits that he has secured the refund of the excess of duty paid by him. The aggregate number of boxes of oranges thus shipped and set forth in the three causes of action embraced in the complaint is 1,752, whereof 1,502 were sent by Tinaglia, and 250 by Rossi. In pleading each cause of action, it is averred upon information and belief that the shipper (Tinaglia or Rossi) is financially irresponsible, and that by reason of the false and fraudulent acts of the defendant, its agents and servants, plaintiff had been damaged in a sum specified, aggregating in all $1,974.84. Upon the theory on which his complaint was drawn, plaintiff would have been compelled to prove, among other things, (1) a trade custom among shippers, known to defendant's agents, by which "boxes" of oranges had a definite meaning, as distinguished from "half boxes"; (2) the issuance of false and fraudulent bills of lading in which the goods were purposely misdescribed as "boxes" when they were in fact only "half boxes"; (3) the knowledge of, and reliance upon, the technical meaning of the word "boxes" by the bankers and their being misled thereby, on account of which they advanced twice what otherwise would have been paid to the consignors; (4) the irresponsibility of Tinaglia and Rossi and plaintiff's inability to collect from them the excess thus paid. Upon the trial, plaintiff changed the theory of his damages. He abandoned any attempt to prove that Tinaglia and Rossi were financially irresponsible, and he relied upon the proposition that he was entitled to recover absolutely from defendant one-half the amount of the advances made by his bankers, on the ground that only one-half the amount of oranges had been forwarded which they were led to expect by the bills of lading. The total advances made by the bankers (including commissions) were $1,592.87, and for one-half of this amount plaintiff has had his recovery.

[1] If his theory of the damages had been correct, he would then have been obliged to prove, among other things, (1) the custom before referred to, of designating "boxes" and "half boxes," known to defendant's agents; (2) a false and fraudulent misdescription of the goods sent in the bills of lading therefor issued by defendant; (3) reliance thereon by the bankers, who knew of the custom and knew what the word "boxes" meant in its trade sense. Not a single one of these essential elements was established by plaintiff. He made no effort to prove that the misdescription (if it existed) was willful or intentional on the part of defendant, that the bankers knew of any trade meaning attached to the word "boxes," or that they were deceived by the term used in the bills of lading. Nor did he establish any damage, for he was simply the commission agent for Tinaglia and Rossi, and for aught that appeared he might have recovered back (or been actually repaid) any excessive advances made to them.

[2] Nor did he succeed in establishing even that there was such a custom in shipping circles as he claimed to exist. Each bill of lading described the goods in question as a certain number of "Cajas naranjas fruta fresca," the literal interpretation of which is "Boxes oranges

fruit fresh." The only concession as to the meaning of the word "cajas" is that it means boxes, regardless of the size thereof. While there is some testimony that boxes of oranges containing 2½ cubic feet had been described as "cajas" by defendant on their bills of lading, it does not at all appear that smaller receptacles were not so described, while the testimony of defendant's witness is explicit, sustaining the concession, that the word "cajas" was applied to boxes regardless of size, and that the freight charged by defendant was 25 cents per box, without reference to its dimensions.

The learned trial court correctly charged the jury that plaintiff "must also show to you, by the same preponderance of evidence, that there is, in the importation trade of oranges and fruit between Vera Cruz and New York, a certain trade meaning or understanding given to the word 'cajas,' as applied to the packages used in the trade between these ports. The contention of the plaintiff is that there is a distinction, known to this defendant, and to all in the trade of importing oranges between these ports as to the existence of three styles or measures of packages used in the shipment of oranges; that there is one style known as a 'case,' another as a 'box,' and another as a 'half box'; and the plaintiff claims that the defendant willfully misstated in their bills of lading so many 'cajas' or boxes, and by other evidences indicated that they were carrying so many boxes, when, in fact, the shipments contained only half boxes." In this requirement of proof laid down by the court without exception plaintiff absolutely failed.

The determination and order of the Appellate Term and the judgment and order of the City Court must therefore be reversed, and a new trial ordered, with costs in this court and in the court below to appellant to abide the event. All concur.